**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PEREZ,<br><br>　　　　　　Petitioner,<br><br>　vs.<br><br>B. CURRY, Warden, and BOARD OF PRISON TERMS,<br><br>　　　　　　Respondents.<br>_____ / | No. C 06-5437 PJH (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

Petitioner pled guilty in Orange County Superior Court to a charge of murder in the second degree. In 1986, he was sentenced to a term of fifteen years to life in state prison. In 2005, the Board of Prison Terms ("Board") held petitioner's seventh parole suitability hearing, during which petitioner was represented and given an opportunity to be heard. At the conclusion of the hearing, the Board found petitioner to be unsuitable for parole.

(Answer, Ex. D at 48-51). The Board based its decision upon the nature of the commitment offense, petitioner's criminal history, and the opposition of the district attorney to parole. (*Id.*)

The Board summarized the facts of the commitment offense as follows:

> On July 27th, 1985, Manuel Galvan was walking down the street that the Delhi street gang claimed as their area. Galvan approached Perez and some of the other members of the Delhi gang for a cigarette. Perez and the others inquired about what gang Galvan claimed and he denied any gang affiliation. Mr. Galvan stated that he had a cousin who was a Loper gang member. Perez and three of the other gang members beat and kicked Galvan. Perez and his girlfriend then entered a house. While his girlfriend showered, Perez went outside to see if the police had come. Perez saw Galvan slowly walking down the street. Perez picked up a two by four and hit Galvan in the head. Mr. Galvan fell unconscious and died of blunt force trauma to the head.

(*Id.* at 6-7 (internal quotations and citations omitted).)

Following the parole hearing, petitioner filed a petition for writ of habeas corpus in superior court, which denied the petition in a reasoned decision on February 1, 2006. (Answer Ex. E (*In re Perez*, M-10798 (Orange County Sup. Ct., Feb. 1, 2006)).) Petitioner subsequently sought relief in the court of appeal and the state supreme court, both of which summarily denied his petitions. (Answer Ex. F (*In re Perez*, G036891 (Cal. Ct. App., April 6, 2006)) and Ex. G (*In re Perez*, S142586 (Cal., June 21, 2006)).) Thereafter, petitioner filed this federal petition for a writ of habeas corpus. Respondent does not dispute that the petition is timely and presents claims that were exhausted in state court. The petition is submitted for a decision on the merits.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When, as here, there is no reasoned opinion from the highest state court to consider

3

the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000). Thus, in order to determine whether the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, the court in this case looks to the opinion of the superior court denying the state habeas petition. (Answer Ex. E.)

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) his due process rights were denied when on April 27, 2005, the Board denied him parole for the seventh time based on the circumstances of his crime; and (2) the denial violated his plea agreement.

**I.     Due Process in Parole Suitability Determinations**

**A.     Some Evidence Standard of Judicial Review**

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (citing *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979)). *See also Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc denied*, 506 F.3d 951 (9th Cir. 2007); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No. 05-16455 (9th Cir. Feb. 13, 2007); *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). *See also Irons*, 505 F.3d at 851. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the

4

relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

Respondent contends that an inmate is entitled to only minimal protections to satisfy due process in a parole proceeding. Citing *Greenholtz*, Respondent contends that due process in state parole procedures is satisfied merely if they afford the inmate an opportunity to be heard and a decision informing him why he did not qualify for parole release. The Ninth Circuit, however, has held that requiring less than the some evidence standard "would violate clearly established federal law because it would mean that a state could interfere with a liberty interest - that in parole - without support or in an otherwise arbitrary manner." *Sass*, 461 F.3d at 1129. Thus, the some evidence standard of *Superintendent v. Hill* is clearly established law in the context of parole denial for purposes of federal habeas review. *Ibid.*

**B.    State Regulations Governing Parole Suitability**

In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Id.*

Under California law, "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit.15 § 2402(c)-(d)." *Id.*

5

Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria for determining whether an inmate is suitable for release on parole. The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail." Cal. Code. Regs., tit. 15 § 2402(c). The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release." Cal. Code. Regs., tit. 15 § 2402(d).

### C. *Biggs* Challenge

Petitioner argues that the Board improperly relied on the unchanging circumstances of the commitment offense and his prior history to find him unsuitable for parole. Petitioner relies on *Biggs*, where the Ninth Circuit suggested in dicta that sole reliance on the commitment offense could raise "serious questions" about a state prisoner's liberty interest in parole. *See Biggs*, 334 F.3d at 916-17. *Biggs* upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to

6

imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17.

As the Ninth Circuit noted in *Sass*, "*Biggs* affirmed a denial of parole after holding that the circumstances of the offense and conduct prior to imprisonment constituted some evidence to support the Parole Board's decision." *Sass*, 461 F.3d at 1126 (citing *Biggs*, 334 F.3d at 917). *See Biggs*, 334 F.3d at 916 ("As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.").

The Ninth Circuit has expressed competing views on *Biggs* in subsequent panel decisions. In *Sass*, the Ninth Circuit held that evidence of Sass's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision. 461 F.3d at 1129. Acknowledging the cautionary statements in *Biggs* concerning the potential for a due process violation by continued reliance in the future on immutable factors, *Sass* criticized that part of the opinion as improper speculation about how future parole hearings could proceed. *Ibid.*

In *Irons*, however, the Ninth Circuit echoed the concern raised in *Biggs* and expressed its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (citing *Biggs*, 334 F.3d at 917). Although the court determined that the Board's unsuitability finding was supported by "some evidence" that Irons's crime was especially cruel and callous, the *Irons* panel pointed out that in the cases holding that sole reliance on the commitment offense did not violate due process, namely, *Irons*, *Sass* and *Biggs*, "the decision was made before the inmate had served the minimum number of years required by his sentence." *Irons*, 505 F.3d at 852-54. *Irons* reasoned that due process was not violated when these prisoners were deemed unsuitable for parole "prior to the expiration of their minimum terms," even if

7

they had demonstrated substantial evidence of rehabilitation.  *Id.* at 854.

Recently, the Ninth Circuit held rehearing en banc in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir.), *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole.  The three-judge *Hayward* panel had concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole, and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation.  512 F.3d at 546-47.  The Ninth Circuit has not yet issued an en banc decision in *Hayward*; since holding rehearing en banc on June 24, 2008, the Ninth Circuit has ordered briefing on the questions, *inter alia*, whether the order granting rehearing en banc should be vacated and submission of the matter deferred, pending the California Supreme Court's decisions in *In re Lawrence*, No. S154018 and *In re Shaputis*, No. S155872, both of which cases were argued on June 4, 2008.  *Hayward v. Marshall*, No. 06-55392, slip op. at 2 (9th Cir. July 10, 2008).

Unless or until the en banc court overrules the holdings of the earlier Ninth Circuit panel decisions in *Biggs*, *Sass* and *Irons*, these cases hold that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process which is satisfied if some evidence supports the Board's parole suitability decision.  *Sass*, 461 F.3d at 1128-29.  These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole, *Sass*, 461 F.3d at 1129.  *Biggs* and *Irons* further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence.  *See Irons*, 505 F.3d at 853-54.

Petitioner has failed to establish the predicate for his *Biggs* claim.  For one thing, petitioner's parole was not denied solely because of the circumstances of his offense and

his prior criminal record, but also because of the objection of the district attorney to his release.  In any event, even assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and one's criminal history, and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim."  The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority within the meaning of 28 U.S.C. § 2254(d)(1).

### D. Some Evidence of Parole Unsuitability

At petitioner's 2005 parole suitability hearing, the Board considered several factors favoring petitioner's suitability for parole, including petitioner's favorable institutional behavior, lack of discipline since 1987, lack of gang activity or affiliation, participation in AA, and positive parole plans.[1]  (Answer Ex. D at 41-43, 49-51.)  However, the Board denied parole based on the finding that these positive factors were outweighed by the following factors indicating unsuitability: (1) the commitment offense was carried out in an especially cruel manner; (2) petitioner had a past record of violence and escalating criminal conduct; and (3) the district attorney opposed parole.  (*Id.* at 48-51.)  In reviewing the Board's decision, the superior court held that "some evidence" in the record supported both the unsuitability factors as well as the conclusion that such factors outweighed the factors in favor of granting parole. (Answer Ex. E at 2-4.)

#### a. Commitment Offense

The regulations provide that the Board may consider the following factors in determining whether the commitment offense was "especially heinous, atrocious or cruel:" (A) multiple victims were attacked, injured or killed in the same or separate incidents;

---

[1] A psychiatric evaluation indicated that petitioner would present a higher than ordinary risk of danger to society if released, but the Board chose not to rely on this evaluation.  (Answer Ex. D at 49-50.)

9

1  (B) the offense was carried out in a dispassionate and calculated manner, such as an
2  execution-style murder; (C) the victim was abused, defiled or mutilated during or after the
3  offense; (D) the offense was carried out in a manner which demonstrates an exceptionally
4  callous disregard for human suffering; (E) the motive for the crime is inexplicable or very
5  trivial in relation to the offense.  Cal. Code Regs., tit. 15 § 2402(c)(1).

6  Petitioner did not dispute the description of the crime as read by the Board, which
7  was based on the 2004 "Life Crime Summary" prepared by the probation department.
8  (Answer Ex. D at 6-7.)  That description indicates that the victim was abused during the
9  offense insofar as petitioner was part of a group of gang members who initially beat and
10 kicked the victim before petitioner eventually killed him.  (*Id.* at 6.)  The crime also evinces
11 callous disregard for the victim's suffering insofar as petitioner pursued and killed the
12 unarmed victim after the attack had ceased and the victim had already been injured, and
13 while the victim was walking away.  (*Id.*)  In addition, the motive for the crime was
14 exceedingly trivial in that petitioner's suspicion that the victim was simply a member of a
15 rival gang hardly provides any conceivable basis for petitioner to kill him.  (*Id.*)

### b. Prior History

17 Petitioner was nineteen years old at the time of the offense, and as a result his prior
18 criminal history consisted of his juvenile record.  Petitioner was arrested at age fifteen for
19 robbery, and petitioner was ultimately convicted of battery.  (*Id.* at 8.)   He was placed in
20 juvenile detention and then on probation.  (*Id.*)  Subsequently petitioner was arrested for
21 being a minor in possession of alcohol, and then for attempted murder, attempted robbery
22 and possession of a dangerous weapon, in violation of his probation.  (*Id.*) Petitioner was
23 convicted of possession of a deadly weapon and violating probation, and he was detained
24 for 120 days.  (*Id.*)  At age seventeen, petitioner was arrested again, and he was convicted
25 of attempted burglary and detained.  (*Id.*)  Petitioner was a member of the Delhi street gang
26 from the age of thirteen, as were most of his friends, and he had been using drugs and
27 alcohol since the age of twelve.  (*Id.* at 9-10.)  This record contains at least some evidence
28 to support the Board's findings of a past "record of violence," an "escalating pattern of

criminal conduct," and a "history of unstable relationships with others." (*Id.* at 49.) In addition, petitioner's failure on probation on multiple occasions supported the Board's conclusion that petitioner "did not profit from society's previous attempts in juvenile probation and juvenile camp." (*Id.*)

### c. District Attorney's Opposition

A member of the Orange County District Attorney's Office opposed granting parole. (*Id.* at 40.) He agreed that petitioner had made progress while in prison. (*Id.*) However, he believed from his experience as a prosecutor of gang-related offenses that the offense, in which petitioner killed an unarmed victim in front of a group of gang members, indicated that petitioner was attempting to demonstrate to the gang "a lifetime loyalty." (*Id.*)

In sum, contrary to petitioner's claim that the Board's decision violated his right to due process, the record contains some evidence to support the Board's finding that petitioner presented a risk of danger to others if released. The evidence in the record showed that the commitment offense was especially cruel, petitioner had a history of escalating violence, instability and an inability to profit from probation, and the prosecutor opposed release on parole. Thus, the state courts' denial of habeas relief on petitioner's due process claim was neither contrary to nor an unreasonable application of clearly established federal law.

## II. Breach of Plea Bargain

Petitioner contends that by denying him parole the Board has breached his plea bargain, because it is in effect treating him as if he had been convicted of first-degree murder. The plea bargain called for a sentence of fifteen years to life, and that is what petitioner received. Although plaintiff contends he is being punished as if he had pleaded to first-degree murder, he in fact is receiving the parole considerations that his fifteen-to-life sentence entitles him. First degree murder is punishable by death, life without parole, or a term of twenty-five years to life. Cal. Penal Code § 190(a). If petitioner had been convicted of first-degree murder, he would not even yet be receiving consideration for parole.

This claim is without merit. The state courts' rejection of petitioner's argument was

11

not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December ___8___, 2008.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.06\PEREZ437.deny.wpd